EXHIBIT P-1

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE, )
)
)
vs. )Crim. Id. No.
)0305016986
JIMMY LEWIS, )
)
Defendant. )October 21, 2003

·  ·  ·  ·  ·

BEFORE:

THE HONORABLE PEGGY L. ABLEMAN

·  ·  ·  ·  ·

APPEARANCES:

BRIAN JAMES ROBERTSON, ESQ.
Deputy Attorney General
For the State

JOHN S. EDINGER, JR., ESQ.
Assistant Public Defender
For Defendant

·  ·  ·  ·  ·

TRANSCRIPT OF TRIAL PROCEEDINGS

·  ·  ·  ·  ·

---

**Page 2**

I N D E X

Opening by the State                Page 33
Opening by the Defense              Page 38

STATE'S
WITNESSES       DIRECT CROSS REDIRECT RECROSS
Patrick Geer      41    77    92,98    96

---

**Page 3**

1          October 21, 2003
2          Courtroom No. 4E
3          11:45 a.m.
4   PRESENT:
5       As noted.
6       (Jury selection reported, but not
7   transcribed.)
8       THE COURT:  All right, ladies and gentlemen,
9   it's 20 of 1, which is a good time for to us break
10  for lunch before we start the trial, so I'm going to
11  ask, please, if you return back -- the bailiff will
12  show you where the jury room is behind the courtroom.
13      If you'll report back here, please, promptly
14  at 2 o'clock, we'll be able to swear you in at that
15  time and begin the evidence in this case.
16      Also, if any one of you is late, then
17  everybody else has to wait, so please try to be on
18  time.
19      Thank you.
20      (Jury left the courtroom.)
21      THE COURT:  Mr. Lewis.
22      THE DEFENDANT:  Yes, ma'am.
23      I have discrepancies with the indictment and

---

**Page 4**

1   I didn't know who the deputy attorney was.  I
2   couldn't understand the penmanship.  I didn't
3   understand who the foreperson was and I didn't see a
4   date and I wanted to be informed of that.
5       THE COURT:  I don't understand what you're
6   saying.
7       THE DEFENDANT:  My indictment.  The
8   indictment.
9       THE COURT:  You don't have a copy of the
10  indictment from your attorney?
11      MR. EDINGER:  He's been provided with copies
12  of it.
13      THE DEFENDANT:  What I'm saying, I couldn't
14  understand.
15      THE COURT:  Well, you don't have --
16      THE DEFENDANT:  It wasn't legible.
17      THE COURT:  Some people, that's how they
18  sign their name.
19      THE DEFENDANT:  Who are these people?  Are
20  these people who provided testimony against me?
21      THE COURT:  They're not going to testify
22  against you.  That was a grand jury that indicted you
23  and it has nothing to do with this proceeding other

EXHIBIT P - 2

5

1 than they have issued the indictment that will form
2 the basis for this prosecution. They're not part of
3 this jury.
4     THE DEFENDANT: So I need not know who the
5 people are who indicted me?
6     THE COURT: No, you do not indeed.
7     THE DEFENDANT: Also, I have a matter
8 about -- I sent in a motion for suppression. I had
9 wanted it to be addressed, for my attorney to submit.
10     THE COURT: You're represented by your
11 attorney and anything you file is not
12 considered -- you can't do it both ways. You have a
13 lawyer or you go pro se. It's one or the other.
14     THE DEFENDANT: I'm going to learn the law.
15     THE COURT: So if you did file a motion to
16 suppress, we don't have it nor would we consider it
17 because Mr. Edinger represents you. If he felt there
18 was a need to file a motion to suppress, that would
19 have been his responsibility.
20     You can't have it both ways. You either go
21 with an attorney or you go pro se.
22     If you're going to be pro se, then you can
23 file things. If you're going to be represented by an

6

1 attorney, you cannot.
2     THE DEFENDANT: Okay. I understand.
3     THE COURT: What is it you're trying to
4 suppress? Do you even know what that means?
5     THE DEFENDANT: Yes. I want it to be
6 suppressed, because I feel as though the legal
7 grounds, the evidence that was being presented
8 shouldn't have been presented.
9     THE COURT: We haven't even gotten to the
10 presentation yet or the trial hasn't even started.
11     THE DEFENDANT: Well, as far as in reference
12 to me being indicted and the proceedings that took
13 forth.
14     THE COURT: Well, you can't suppress an
15 indictment.
16     THE DEFENDANT: Can I show you what I was
17 speaking of?
18     THE COURT: Well, I'm not going to consider
19 it today because it's not properly filed and it
20 hasn't been filed in time and I'm not going to take
21 it up right now, but if you're seeking to suppress
22 the indictment, your motion is denied or your request
23 is denied.

7

1     THE DEFENDANT: It's not suppressing the
2 indictment. I just wanted to have disclosure about
3 the indictment.
4     THE COURT: You can't. Grand jury
5 proceedings are secret. That's the law.
6     THE DEFENDANT: I also wanted to know who it
7 was.
8     THE COURT: They're secret.
9     THE DEFENDANT: I understand that, but in
10 reference to the suppression, you asked me specific
11 questions. I can't be specific because I don't have
12 it in front of me. If you give me a minute?
13     THE COURT: All right.
14     MR. EDINGER: Is this it?
15     THE DEFENDANT: Ground one on the
16 out-of-court identification violated the defendant's
17 due process clause to the United States Constitution
18 as it was unduly reliable as well as suggestive.
19     THE COURT: Well, that's not been presented,
20 so it's not going to be heard.
21     THE DEFENDANT: But these are the things I
22 presented to my attorney in advance.
23     THE COURT: He's the lawyer and he

8

1 knows -- it's his judgment. He's the attorney. He
2 knows whether or not there's any grounds for that.
3     THE DEFENDANT: I'm the one standing for
4 trial.
5     THE COURT: Sir, when you go to an emergency
6 room when you have a broken leg, do you fix it
7 yourself and put a cast on -- excuse me, let me
8 finish -- or do you rely upon the doctor or the
9 orthopedic surgeon to do it for you?
10     THE DEFENDANT: I have to tell the doctor or
11 orthopedic surgeon what is wrong with me. If I can't
12 tell the doctor or orthopedic surgeon what it is
13 wrong, they can't properly prepare to treat me.
14     THE COURT: You have two choices, sir, and
15 we're not going to act like this when the jury comes
16 in.
17     Once they come into this courtroom, there's
18 going to be no interruptions, do you understand that?
19     You have two choices. You either go on your
20 own and you represent yourself which I strenuously --
21 probably won't let you or allow Mr. Edinger to make
22 the decisions whether or not he should file motions
23 and argue certain defenses. He went to law school.

EXHIBIT P-3

9

1  He's an experienced defense attorney. You're not.
2  THE DEFENDANT: I never said I was. I could
3  understand and comprehend the law to tell him.
4  THE COURT: A little knowledge is sometimes
5  a dangerous thing.
6  THE DEFENDANT: No knowledge is even
7  dangerous.
8  THE COURT: I think you should be relying
9  upon him, but I'm going to give you your choice right
10  now.
11  You either go by yourself or you allow him
12  to represent you, and if he's representing you, then
13  you cannot complain about the decisions he's making
14  during the course of this trial.
15  THE DEFENDANT: In going by myself, would I
16  be able to present my motions I'm presenting and my
17  motion to present my Rule 16?
18  THE COURT: No. No. No, because this is
19  the time of trial. Those motions have not been
20  presented prior to trial. There's no way you can
21  present them now. If they don't get presented before
22  trial, you've waived your right to present them.
23  THE DEFENDANT: I never waived any rights.

10

1  I never did this. Not voluntarily.
2  THE COURT: That's the law. If you don't
3  present them in advance of trial, the law presumes
4  you waive them. Whether you waived it or not, you
5  haven't presented them in a timely fashion. They
6  will not be considered today.
7  Now, we're ready to start the trial.
8  THE DEFENDANT: I need to represent myself
9  then.
10  THE COURT: All right. Well, I have to go
11  through a colloquy with you and let me tell you
12  something else, sir. If you do represent -- I'm not
13  even sure I'm going to allow you to, but if you do,
14  any disruptions in this case, I'm not going to allow
15  you to do that, because the first thing I did when I
16  walked in here was hear you interrupt this
17  proceeding. And that's not the way we practice law
18  and how we conduct our trials in this court. Do you
19  understand that?
20  THE DEFENDANT: I understand.
21  THE COURT: All right.
22  Why do you believe you're capable of
23  representing yourself?

11

1  THE DEFENDANT: Because I understand that
2  there's motions and things that should have been --
3  THE COURT: The motions are not going to be
4  heard whether you represent yourself or not.
5  THE DEFENDANT: There's no way I can have my
6  grounds presented?
7  THE COURT: No way. No way.
8  THE DEFENDANT: I'll just be railroaded.
9  THE COURT: Sir, I'm not calling it that
10  because your lawyer is experienced and knows what to
11  do.
12  THE DEFENDANT: In the interest of justice,
13  you know what I'm saying, under the Constitution, you
14  know, under the United States Constitution, the
15  Fourth, Fifth, Sixth, and Eighteenth Amendment, I
16  think I have a right.
17  THE COURT: No, you don't. No, you don't.
18  No, you don't.
19  THE DEFENDANT: I mean I want to understand.
20  THE COURT: He had -- Mr. Lewis, you're not
21  listening.
22  THE DEFENDANT: I want to understand why
23  I've presented all this information.

12

1  THE COURT: You're not listening.
2  THE DEFENDANT: You're not letting me to
3  speak.
4  THE COURT: You're not listening. I want
5  you to listen to me. Mr. Edinger knows what to file
6  and what not to file. That's why he represents you.
7  And if you presented these to him and he didn't think
8  he could present in good conscience to the Court --
9  THE DEFENDANT: He didn't speak to me about
10  these things at all.
11  THE COURT: Well, it's too late. It's too
12  late and I am -- at this point, I'm not going to let
13  you represent yourself because it's too obvious to me
14  you don't know enough about this proceeding for it to
15  go smoothly and it's too obvious to me you're going
16  to prejudice yourself.
17  THE DEFENDANT: I've already been
18  prejudiced.
19  THE COURT: We're going to go forward.
20  THE DEFENDANT: It's already biased.
21  THE COURT: You can complain about that on
22  appeal.
23  THE DEFENDANT: Appeal. You already found

EXHIBIT P-4

13

1  me guilty. What do you mean appeal?
2          THE COURT: I'm not even deciding this case.
3  You have 14 people seated on this jury, sir. You've
4  got 14 people seated on this jury. I'm not deciding
5  this case. They are. But I can tell you right now,
6  if you act like that during the course of this trial,
7  they will decide this case.
8          That's my advice to you. You'd better
9  change your attitude.
10          THE DEFENDANT: What attitude is that?
11          THE COURT: Oh, okay.
12          THE DEFENDANT: I don't have an attitude.
13  I'm trying to converse with you in reference to
14  understand what it is you're trying to have me
15  understand. I'm having difficulties understanding
16  why you, you know, you're suppressing me.
17          THE COURT: I'm not suppressing anything.
18  I'm telling you the rules are those motions are not
19  to be heard today. They have not been filed prior to
20  trial. There's no way that this Court is going to
21  allow you --
22          THE DEFENDANT: That's not fair. That's not
23  fair.

14

1          THE COURT: I'm sorry, that's the law.
2  That's the rules of the Court.
3          THE DEFENDANT: The law is unfair is what
4  you're telling me.
5          THE COURT: I don't believe it is, but
6  that's the law.
7          THE DEFENDANT: So why are you proceeding a
8  if it was unfair?
9          THE COURT: Well, that's your view, opinion,
10  and it's different from everybody else's in this
11  room.
12          THE DEFENDANT: Yes, it is, because I sat at
13  Gander Hill waiting for months and months, presenting
14  everything that I presented ahead of time and in due
15  advance and advance notice, everything I submitted.
16          THE COURT: Sir, sir, we're going forward
17  with trial at 2 o'clock. There will be no motions
18  presented today. There will be no motions presented
19  today. We are going forward with the evidence at
20  2 o'clock and I will expect you to conduct yourself
21  as if you're in a courtroom and not to interrupt the
22  proceedings. Do you understand? Do you understand?
23  Do you understand, sir? Or do I have to find you in

15

1  contempt and leave you in jail until you tell me yes
2  or no because we don't have to go forward today with
3  this trial. We can wait forever.
4          THE DEFENDANT: I'm hearing voices right
5  now. I don't understand. I can't understand you.
6  I'm hearing voices right now.
7          THE COURT: What do you mean you're hearing
8  voices?
9          THE DEFENDANT: I have a psychological
10  condition. I didn't take my medicine today. I'm
11  hearing voices. I don't understand what you're
12  trying to tell me.
13          THE COURT: We're going forward at 2 o'clock
14  with the evidence.
15          THE DEFENDANT: Okay.
16          (Defendant left the courtroom.)
17          THE COURT: Mr. Edinger, what is it that he
18  wanted you to file?
19          I think you should make a record, actually.
20          MR. EDINGER: He requested that I file a
21  motion to suppress the police officer's -- or the
22  identification by the victim in this case as being
23  prejudicial.

16

1          I see no basis since he testified at the
2  preliminary hearing that he did, in fact, have eye
3  contact with the alleged victim.
4          THE COURT: Identity's not an issue?
5          MR. EDINGER: Identity's not an issue in
6  this case and so no motion was filed in this matter.
7          THE COURT: And that's understandable.
8          MR. EDINGER: And as to meeting him, I not
9  only met with him at the two case reviews, but I've
10  had three separate prison interviews with him.
11          THE COURT: Which is a lot.
12          MR. EDINGER: So he's had the opportunity.
13          THE COURT: Does he have any mental
14  problems?
15          MR. EDINGER: Well, your Honor, when he just
16  said that, I looked at the file, and, you know,
17  obviously, we're not psychiatrists, we can't identify
18  if he does have mental problems, but we do ask
19  questions, whether he's been treated for any mental
20  illness or under any medication.
21          From my investigator's report, our initial
22  interview report, he did not report that he has any
23  history of mental health issues.

**17**

1    THE COURT: Because he just mentioned that.
2    MR. EDINGER: He just mentioned that and
3    that's the first I heard that.
4    THE COURT: Maybe you ought to pursue that.
5    I mean just find out what it is he said he didn't
6    take this morning. He was okay and everything was
7    fine, he was going to be his own lawyer, and now he's
8    hearing voices, so that seemed like he was running
9    out of excuses.
10    But if identity is not an issue, then the
11    motion to suppress should not have been filed, and
12    had you filed it, you would have probably not have
13    made this Court very happy. so you did your job as an
14    attorney under the circumstances.
15    Is there anything else he wanted you to
16    file?
17    MR. EDINGER: Nothing he --
18    THE COURT: The grand jury thing, I don't
19    know why he wants the names other than --
20    MR. EDINGER: He did request the grand jury
21    testimony which he was informed he's not entitled to.
22    THE COURT: No, that's secret.
23    MR. EDINGER: And he requested our office

**18**

1    provide him a transcript of the preliminary hearing.
2    I told him that in this case in which he already
3    testified, we have the notes of the attorneys during
4    that. I did not see the need for our office to --
5    because it costs money for these transcripts.
6    THE COURT: Sure.
7    MR. EDINGER: And we have a limited budget,
8    which we have to make certain judgments as to the
9    allocation of those resources, and I did not see any
10    of the preliminary hearing testimony, which had just
11    been the testimony of the police officer, as being
12    helpful in this case when it's an issue of what the
13    alleged victim says in this case, which would be a
14    trial, and I told him I did not see the
15    preliminary -- see that the preliminary hearing
16    transcript would assist me in cross-examining the
17    victim. And I told him we were not going to get a
18    preliminary hearing transcript.
19    THE COURT: Okay. That's good. Then you've
20    made your record.
21    One of the jurors was upset because he
22    thought he was going to get excused.
23    THE CLERK: John Ringer.

**19**

1    THE COURT: Mr. Ringer.
2    MR. ROBERTSON: I thought he had been
3    excused.
4    THE COURT: Are you comfortable with me
5    letting him go and just sticking with one alternate?
6    MR. EDINGER: I'm fine.
7    MR. ROBERTSON: I'm fine.
8    THE COURT: Are you sure?
9    MR. ROBERTSON: Yes.
10    THE COURT: Okay, because he's pretty upset
11    because he's got his own business. That's not a
12    basis for me to excuse someone, but I kind of figured
13    since he was not real anxious to be here, one of you
14    might have done it for us, but I think I'd be
15    inclined -- I don't want jurors who aren't like
16    open-minded and have the right attitude, and if he's
17    going to be here, it's not going to be good for
18    anybody, so will you excuse him and seat Alternate
19    Number 1 in his place?
20    THE BAILIFF: Yes.
21    THE COURT: All right. We'll see you back
22    at two.
23    MR. ROBERTSON: Thank you.

**20**

1    (After luncheon recess.)
2    MR. EDINGER: Good afternoon, your Honor.
3    THE COURT: Mr. Edinger.
4    MR. EDINGER: The Court asked me to, at the
5    lunchtime, to inquire about Mr. Lewis and whether he
6    is taking any medications at this point.
7    I contacted the Correctional Medical
8    Systems. They required a waiver. I went down to Mr.
9    Lewis to get a waiver so I could find out what
10    medications. He responded he just did not understand
11    the waiver. At this point, I cannot report back to
12    the Court whether he is on medications or not.
13    THE COURT: All right, we'll proceed then.
14    MR. EDINGER: Your Honor, I've just -- my
15    only thing, there may be -- he would provide
16    that -- they would provide that if I had a Court
17    order.
18    THE COURT: Well, if he's not willing to
19    give you a waiver, then he's not willing for you to
20    understand his competence or any other issue
21    regarding his psychiatric, psychological or mental
22    state and I think we should proceed with the trial.
23    MR. EDINGER: I would state he's

EXHIBIT P.- 6

**21**

1 nonresponsive. Not that he wouldn't sign the paper.
2 He said he did not understand.
3    THE COURT: Well, Mr. Lewis, if you wanted
4 the Court to consider your mental competency, you
5 would have had to have signed that waiver and your
6 refusal to do so means we're just going to go forward
7 with the trial.
8    THE DEFENDANT: I don't understand. I don't
9 understand, ma'am. I don't understand.
10    THE COURT: Do you take any medicine?
11    THE DEFENDANT: Yeah.
12    THE COURT: What do you take?
13    THE DEFENDANT: Medicine for the voices.
14    THE COURT: What do you take?
15    THE DEFENDANT: I don't understand -- I
16 don't understand the name of it.
17    THE COURT: The only way that I'm willing to
18 consider that as a problem is if you're willing to
19 sign off so we can find out from the Department of
20 Corrections what it is that has been prescribed.
21    Who prescribed this medicine for the voices?
22    THE DEFENDANT: The doctor.
23    THE COURT: Who?

**22**

1    THE DEFENDANT: The doctor.
2    THE COURT: What doctor? Who?
3    THE DEFENDANT: Doctor at the jail.
4    THE COURT: Doctor at the jail?
5    THE DEFENDANT: Um-hum.
6    THE COURT: What's his name or her name?
7    Well, if you're going to sign a waiver and
8 let us look at what your medical records say, fine.
9 If not, we're proceeding.
10    THE DEFENDANT: I don't understand what you
11 mean, ma'am.
12    THE COURT: Well, I have to find out whether
13 you really are on medication or not. And in order to
14 do that --
15    THE WITNESS: I'm on medication. They give
16 me medication.
17    THE COURT: I'm not going to take your word
18 for it. I want to find out from the prison what it
19 is they're supposed to be giving you and whether or
20 not it's for any psychological or any psychiatric
21 problems, and if there isn't, there's no issue of
22 competence here or issue of your mental state.
23    Now, if you're not willing to sign off, then

**23**

1 we're going to go forward.
2    THE DEFENDANT: What's that got to do with
3 this? What's that got to do --
4    THE COURT: Well, as long as you don't
5 think -- you, because you mentioned it, and I thought
6 maybe you wanted the Court to consider you have a
7 mental problem, but as long as you don't consider it
8 to have anything to do with this, we're ready to go
9 forward. We're going to bring the jury in.
10    THE DEFENDANT: I don't understand what you
11 mean.
12    THE COURT: Well, you'll have to talk to Mr.
13 Edinger. He's your attorney. I can't counsel you
14 any further.
15    THE DEFENDANT: Okay.
16    MR. ROBERTSON: Your Honor, before we bring
17 the jury in, there's one matter you may want to
18 reserve in the event the defendant does, in fact,
19 testify. There is an out-of-state record. There are
20 convictions on there that would impact on
21 credibility, specifically a robbery conviction with
22 the date, and the Court -- and we can provide
23 that -- and if the Court would care to deal with the

**24**

1 question of that admissibility when we cross that
2 bridge, that's fine.
3    THE COURT: I think we'll wait and get
4 started. We've got a jury waiting.
5    THE DEFENDANT: Okay. I'll sign.
6    THE COURT: You'll sign what?
7    THE DEFENDANT: The medicine.
8    THE COURT: All right. Will they be able to
9 give you that information over the telephone?
10    MR. EDINGER: I have somebody over at Gande
11 Hill right now.
12    THE COURT: All right.
13    MR. EDINGER: I will, in fact, have this
14 faxed over right away.
15    THE COURT: All right. Would you let me
16 know when you get it, Mr. Edinger, and I'll take a
17 recess.
18    MR. EDINGER: Yes.
19    (At this time, a recess was taken.)
20    THE COURT: Mr. Edinger.
21    MR. EDINGER: Good afternoon, your Honor.
22    I faxed the release over shortly after I
23 left the courtroom. That was hand delivered by our

EXHIBIT P-7

25

1 staff over at Gander Hill to the Prison Medical
2 Services and they're waiting for a response.
3 My understanding, though, is that under the
4 new regulations, it requires certain approvals before
5 they can release that information which normally
6 requires a warden's signature. I'm waiting for a
7 phone call back from our staff regarding that.
8 THE COURT: We're going to go forward and
9 then if for some reason there's a reason for me to
10 declare a mistrial -- at this point. I'm just ready.
11 I think it's best we go forward. We've got a juror
12 that's been inconvenienced all day and you can
13 make -- it may be a nonissue, so I'll go on that
14 basis.
15 All right, will you bring the jury in,
16 please?
17 (THE jury returned to the courtroom.)
18 THE COURT: Good afternoon, ladies and
19 gentlemen.
20 Thank you very much for your patience.
21 Will the clerk please swear the jury?
22 THE CLERK: Yes, your Honor.
23 (Jury duly sworn.)

26

1 THE COURT: Ladies and gentlemen of the
2 jury, what I will now say to you is intended to serve
3 as an introduction to the trial of this case. It is
4 not a substitute for the detailed instructions on the
5 law which I will give to you at the close of the
6 evidence and before you retire to consider your
7 verdict.
8 The case you are about to try is a criminal
9 case as distinguished from a civil case. It is a
10 case commenced by the State of Delaware, which may
11 sometimes be referred to as the State or the
12 prosecution, against, in this case, Jimmy Lewis, who
13 may be referred to as the defendant or the accused.
14 The defendant is charged in this court by an
15 indictment. In this case, he is charged with one
16 count of carjacking in the second degree, one count
17 of theft, and one count of resisting arrest.
18 The indictment is a mere accusation against
19 the defendant. It is not in itself any evidence of
20 the guilt of the defendant. You should not allow
21 yourselves to be influenced in any way, however
22 slight, by the fact that an indictment has been
23 returned against this defendant.

27

1 The defendant has pleaded not guilty to the
2 indictment and he is presumed innocent unless his
3 guilt is proved beyond a reasonable doubt. The
4 prosecution, therefore, has the burden of proving the
5 charges beyond a reasonable doubt. And the purpose
6 of this trial is to determine whether the defendant
7 is guilty or not guilty.
8 You will consider all of the evidence
9 produced during the trial and reach a decision with
10 the help of certain instructions as to the law
11 applicable to this case that I will give to you at
12 the close of the trial.
13 You alone have the responsibility to
14 determine the facts from all of the evidence produced
15 during the trial.
16 You know, to begin the trial, there will be
17 opening statements by the prosecution and the defense
18 attorney. These opening statements are not evidence,
19 but are made to give you some idea as to what the
20 case is about.
21 The prosecuting attorney may make -- will
22 make an opening statement to you concerning the
23 evidence to be produced in support of the charges.

28

1 The defense attorney may make a statement
2 concerning the evidence to be produced or he may
3 reserve the right to do so until the completion of
4 the evidence offered in the prosecution's case.
5 The prosecuting attorney must offer evidence
6 in support of the charges in the indictment.
7 The defense may offer evidence on behalf of
8 the defendant, but is not obliged to do so.
9 If the defendant chooses to offer evidence,
10 the State may then offer evidence in rebuttal of the
11 defense evidence.
12 Remember that the burden is always on the
13 prosecution to prove every element of any offense
14 charged beyond a reasonable doubt.
15 The prosecuting attorney will then deliver a
16 summation of the evidence for you and base an
17 argument for conviction on the evidence.
18 The defense will then deliver a summation of
19 the evidence for you and base an argument for
20 acquittal or other verdict on the evidence.
21 And the prosecuting attorney will then reply
22 to the arguments made by the defense.
23 Now, your purpose as jurors is to find and

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE,

v.                          ID
                            No. 0305016966
JIMMY LEWIS,

        Defendant.

BEFORE:  HON. PEGGY L. ABLEMAN, J., AND JURY

- - - - - -

TRANSCRIPT OF TRIAL TESTIMONY

- - - - -

COPY

- - - - - - - - - - - - - - - - - - - - - -
            JOHN P. DONNELLY, RPR
          SUPERIOR COURT REPORTERS
500 N. KING STREET   WILMINGTON, DELAWARE 19801
              (302) 255-0563

---

October 22, 2003
Courtroom No. 6E
10:30 a.m.

BRIAN ROBERTSON, ESQUIRE
DEPARTMENT OF JUSTICE
920 N. French Street
Wilmington, Delaware 19801
  for State of Delaware

JOHN S. EDINGER, ESQUIRE
OFFICE OF THE PUBLIC DEFENDER
920 N. French Street
Wilmington, Delaware 19801
  for Defendant

---

3

1    THE COURT: Ready to proceed?

2    MR. ROBERTSON: Yes, we are, Your Honor.

3    THE COURT: Bring in the jury, please.

4    (Jury enters the courtroom at 10:33 a.m.)

5    THE COURT: Ladies and Gentlemen of the Jury,

6 good morning. I apologize for the delay. We are short

7 staffed this morning with correctional officers. I

8 thank you very much for your patience during the time

9 that you have been waiting. I need to ask you whether

10 or not you have discussed any of the evidence or

11 anything that you heard during the course of this trial

12 either among yourselves or with anyone else? All

13 right.

14    MR. ROBERTSON: State calls officer Jose

15 Santana.

16        JOSE SANTANA,

17    having been first called by the State was sworn on

18 oath, was examined and testified as follows:

19            DIRECT EXAMINATION

20 BY MR. ROBERTSON:

21    Q. Good morning, Officer Santana. Where are you

22 employed?

23    A. With the Wilmington Police Department.

---

4

1    Q. How long have you been employed with

2 Wilmington PD?

3    A. Going on a year.

4    Q. What are your duties with Wilmington Police?

5    A. Typical patrol duties, I guess, the typical

6 thing of answering complaints, patrol activity, keeping

7 crime down in the neighborhoods, things like that.

8    Q. In that capacity have you had occasion to

9 interact with suspects?

10    A. I have.

11    Q. And in that capacity, have you had occasion to

12 make arrests of suspects?

13    A. I have.

14    Q. Also participate in investigations?

15    A. I have.

16    Q. How long was your training to become a member

17 of the Wilmington Police Department?

18    A. Six months.

19    Q. Was that at an academy?

20    A. That was the academy itself. There is still

21 another six months afterward on the street, which I am

22 going to be finished with this week.

23    Q. Officer, were you working in that capacity on

5

1  the 26th of May of this year?

2     A.  I was.

3     Q.  For the record, I should state 2003.  What
were your duties at that time?

5     A.  We were patrolling, typical patrol functions
6  that morning.

7     Q.  When you say "we," who is we?

8     A.  Me and my partner, Officer Godwin.

9     Q.  Where were you patrolling?

10    A.  We were patrolling the areas of the 4th
11 street, Hilltop, from 95 to Union Street, between that
12 area there.

13    Q.  Did you receive a 911 call that evening?

14    A.  There wasn't -- we were dispatched to a call
15 at 4th and Jackson.

16    Q.  Can you tell us how those calls come in?

17    A.  They come in through a dispatcher.  They then
18 choose the vehicle that is closest to it, or District
19 car to that area.  Send them -- dispatch them to the
20 complaint.

21    Q.  What was the call you received on that
22 morning?

23    A.  That morning it was received as a carjacking.

6

1     Q.  Do you recall the approximate time that call
2  came in?

3     A.  I believe the call came in earlier.  We were
4  dispatched later.  We were on some complaints
5  ourselves.  We were dispatched around two.

6     Q.  Where were you dispatched to?

7     A.  Fourth and Jackson, to the Amoco station.

8     Q.  Did you respond to 4th and Jackson?

9     A.  We did.

10    Q.  That is located within the City of Wilmington,
11 New Castle County?

12    A.  Correct.

13    Q.  What did you upon arriving at 4th and Jackson?

14    A.  Upon arrival we located a victim.  He was
15 Patrick Greer, I believe.  He was very excited.

16    Q.  Where was he when you first arrived at that
17 location?

18    A.  He was at the Amoco station at their window.

   Q.  I think it is safe to say he was backed up
19 close to the building?

21    A.  Correct.

22    Q.  Was there anybody else around?

23    A.  Some onlookers, but that was about it.

7

1     Q.  You said you described his emotional state.
2  How would you describe his emotional state when you
3  first saw him?

4     A.  He was very upset.

5     Q.  What made you think that?

6     A.  He wouldn't stand still.  He moved about.  He
7  moved his hands about.  He spoke very, very quickly.
8  We had to calm him down a little bit.

9     Q.  Were you concerned in anyway for your safety
10 having looked at this person doing this?

11    A.  Not with our safety, necessarily.  We were
12 trying to figure out if he was injured at that point.
13 We were not entirely sure when we first spoke to him,
14 He made it clear he was not.

15    Q.  What did he tell you?

16    A.  He told us that he was in the unit block area
17 of -- look at my notes here.  It was the -- sorry.

18       Orange and 4th street, around that area, unit
19 block, I believe, of Market Street.

20    Q.  Market Street?

21    A.  In that vicinity there.

22    Q.  For the persons who are not familiar with
23 that?

8

1     A.  Unit block goes from one to one hundreds, the
2  addresses and such.

3     Q.  Out of that, what did Mr. Geer tell you?

4     A.  He was in that location.  He told us that he
5  was looking for some male companionship at that time.

6     Q.  He said this to you?

7     A.  He said this to us.

8     Q.  Okay.

9     A.  He, at that point, he pulled up to a light
10 there at that location, and the defendant leaped into
11 the vehicle on his driver's side -- on his passenger's
12 side.

13    Q.  How is he telling you this, what were his
14 mannerisms or expressions, or tone of his voice?

15    A.  He was very excited.  His tone was very high.
16 He was waving his hands around, again, moving about.

17    Q.  What else did he say?

18    A.  He proceeded to tell us that the defendant
19 asked him for a ride up the hill.  Mr. Geer said that
20 he would take him up the hill.  When they were about
21 4th and Jackson, Mr. Geer told us that the defendant
22 started to ask him for money.  Mr. Geer offered the
23 money in his change cup he had in the vehicle.  He

3

1    The sentencing guidelines in this case would
2    recommend a period of incarceration. And I would submit
3    that the time that he's been held on this offense, which is
4    going on close to two years, is a sufficient penalty in this
5    matter, and we're asking the Court to consider sentencing
6    Mr. Lewis to time served.
7        I don't know if Mr. Lewis wants to address after
8    the State addresses.
9        MR. ROBERTSON: Your Honor, the State is not
10   seeking to have Mr. Lewis declared a habitual offender
11   pursuant to 4214, but he is an habitual offender. He's got
12   a criminal record as an adult that goes back almost 20
13   years, spans three states now. It's unique in that it
14   covers a number of different types of crimes. He has
15   offenses for selling drugs, for robbery, for burglary, for
16   assault, and as your Honor probably recalls from the trial
17   your Honor presided over, for carjacking, the present
18   matter. It seems like the only time that he is not, in
19   fact, committing offenses is when he is in custody, although
20   I note, in this case, that's not even true.
21       He went to the state hospital, as your Honor
22   might recall, last year for an evaluation. The report there
23   summarizes his behavior even at the state hospital while he

---

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE,

          v.                    I.D. No. 0305016966

JIMMY LEWIS,
          Defendant.


          FRIDAY, FEBRUARY 11, ...

BEFORE.

APPEARANCES:

          DEPARTMENT OF JUSTICE
          BY:  BRIAN ROBERTSON, ESQ.,
               FRANCIS FARREN, ESQ.,
               Deputy Attorneys General
               For the State

          JOHN S. EDINGER, JR., ESQ.,
               For Defendant

          TRANSCRIPT OF SENTENCING

          - - - - - - - - - - - - - - - - - - - - - - - -
          LYNNE BELL COALE, RMR, CRR
          SUPERIOR COURT REPORTERS
          500 N. KING STREET   WILMINGTON, DELAWARE 19801
                    (302) 255-0562

          23

2

1    (Courtroom 6C, 9:30 A.M.)
2                - - -
3        MR. FARREN: Next item will be No. 3, Jimmy
4    Lewis.
5        MR. ROBERTSON: Your Honor, we may need to
6    approach regarding Mr. Lewis. Your Honor, may we approach?
7        (Unreported sidebar.)
8        MR. EDINGER: Good morning, your Honor.
9        THE COURT: Good morning, Mr. Edinger.
10       MR. EDINGER: I have just a few brief comments.
11   It's my understanding at this point that the
12   State is not going to pursue the Habitual Offender Motion
13   and, therefore, my comments will just be towards the
14   sentencing.
15       MR. ROBERTSON: That's correct, your Honor.
16       MR. EDINGER: The Court presided over the trial,
17   so I don't need to -- I don't believe I need to review the
18   facts of the case. As the Court well knows from the
19   Presentence investigation, Mr. Lewis maintains his innocence
20   at this time.
21       I would note that he has been in custody since
22   his arrest in 2003, continuous custody; that prior to being
23   incarcerated, he had been employed and had been working.

4

1    was being evaluated. And I'd note that Page 4 of that
2    report talks about, on June 7 of last year, where Mr. Lewis,
3    angered by not receiving a certain salad at dinner which he
4    believed he was entitled, assaulted a peer and a staff
5    member. That report came out on June 15.
6        Mr. Lewis was the subject of another report just
7    six days later, only this was a Delaware State Police report
8    when, after a beef over a DMX tape, he broke the jaw of
9    another person who was residing at the Delaware State
10   Hospital at that time -- all this for the prospect that he
11   was diagnosed, not with schizophrenia, not with any other
12   chronic mental illness, but with malingering. That seems to
13   be correct, given his history.
14       He doesn't have a pronounced mental illness. The
15   offenses that he's committed do not seem to be borne of a
16   addiction of drugs, as we've seen some of the other persons
17   today, or even alcohol. He's characterized as being
18   intelligent, and I think your Honor has actually seen some
19   of the exchanges. He's 38 years old at this point. He's
20   been doing it for the better part of 20 years. He's going
21   to keep doing it if he's out. He does this because he wants
22   to. There's no other compelling reason.
23       The State submits that it actually merits a

5

1    Level 5 sentence that would go beyond which is allowed in
2    this case, but the Court is constrained by the five years
3    maximum on the carjacking statute. State submits that that
4    is an appropriate amount for what Mr. Lewis has done, not
5    only specifically in this case, but looking at his history,
6    a minimum of five years is necessary to protect the public.
7            THE COURT: Mr. Lewis, do you have anything to
8    say to the Court before I sentence you?
9            THE DEFENDANT: Yes, ma'am. Before I was
10   incarcerated, a missing-person ad was put in the paper for
11   me because of my psychological condition, diagnosed with
12   manic depression, schizophrenia. The ad read, you know,
13   seeking help for the public assistance to find me on May --
14   May 19 of 2003. I was thereafter incarcerated less than a
15   week later here in Wilmington, Delaware, as I was commuting
16   to my father's property in North Carolina to receive, you
17   know, a little more assistance with my commercial driving
18   career.
19           In the process, I realized that, you know, the
20   medicines that I have refused in the past, I was -- I really
21   needed them more than I realized at the time. I have been
22   incarcerated in the past, and it was more or less due to my
23   psychological conditions. Since -- since then, since being

6

1    incarcerated here in Delaware, I've been prescribed
2    psychotropic medications and been receiving treatment,
3    treatment courses from mental-health personnel staff and
4    stuff. And after taking the medicine, I feel like I come up
5    out of a big cloud, and it's -- there's been a big different
6    in my whole life.
7            I was making changes in my life already. I was
8    making dramatic changes in my life: Obtained my high-school
9    diploma, obtained a Class C license so I can elevate my
10   social status. You know, it was a big change in things that
11   I have done ways doing in society.
12           And in regards to me, you know, being a different
13   person and being a productive law-abiding citizen, I always
14   had this dilemma that I couldn't deal with on my own without
15   medications and things of that nature to help me.
16           In the Delaware Psychiatric Center, as -- as
17   Mr. Brian Robertson has spoke of, it was a situation that I
18   was -- I was accused of that I didn't -- you know, I didn't
19   partake in. And in regards to psychological evaluation, it
20   was -- it was submitted with numerous errors in things that
21   were said about me that aren't true by me being evaluated on
22   -- well, being incarcerated on November 17, 2003, when I was
23   already incarcerated on May 26, you know, so the -- the

7

1    evaluation was for trial -- for -- was being done for to see
2    if I can stand trial, but I already stood trial in October.
3    It's numerous things as far as me being strapped down six,
4    seven times and being prescribed -- being injected with
5    psychotropic medicines because of me being delusional and
6    psychotic. And these are the direct reasons for my -- for
7    my behavior -- my behavior problems. And since -- since
8    then, I have received better treatment at the -- better
9    treatment as far as psychotropic medication treatment, and I
10   have been able to really focus more clearly. My mind is not
11   befuddled as it was, and I'm much more clearer.
12           And I would like to have the opportunity to, you
13   know -- to return to society. I was -- like I said, I had
14   obtained my CDL license. My whole life had changed and,
15   more so now than ever, I've been able to really focus clear
16   on things that I need to do in order to, you know, fulfill
17   my obligations as a law-abiding citizen in society. But
18   without the medications, I was unable to do these things,
19   you know, and I was unable to really, you know, approach
20   things, and I always found myself in some kind of dilemma or
21   circumstances like I found myself to be here now. You know,
22   it's just a lot of things that I would like to do.
23           My parents are being -- are elderly. I'm -- I'm

8

1    of age. I'm their only child. And I got two daughters,
2    super honor-roll students, and they need me to -- you know,
3    to pay their tuition to help them out. I would like to be
4    able to have the opportunity to return to society. I
5    believe I'm safe. I don't pose any danger to anyone. I
6    believe I have a career that I'm -- I can fall back on.
7            My family, my father has 150 acres of land in
8    North Carolina. My mother is a re -- my mother's a retired
9    dietician. She's here in Court, you know. I don't think
10   I'm a bad person. I think that I have some dilemmas that I
11   didn't allow me to be the type of person that I should have
12   been, more so than anything else. I would like for you to
13   take that psychological condition into consideration and not
14   just that I was being reckless or that I commit any crimes
15   intentionally, because I never really did have the
16   opportunity to address the conditions that, you know, cause
17   me to be --
18           THE COURT: When did you go to medical school to
19   become a psychiatrist, Mr. Lewis?
20           THE DEFENDANT: I didn't, your Honor.
21           THE COURT: So, you've just diagnosed yourself
22   for the Court --
23           THE DEFENDANT: Well --

EXHIBIT R-2

9

1    THE COURT: -- contrary to the other report that
2  was provided to me, or reports from different psychiatrists
3  who did go to medical school and are trained, and who felt
4  that you were faking.
5    THE DEFENDANT: Well, I have -- I have -- I have
6  a medical psychological treatment plan that I have received
7  while I was in New Jersey that diagnoses me with the
8  conditions that -- that I'm speaking of, actually, with
9  medications --
10    THE COURT: I guess it really doesn't matter,
11  because my feeling about you is that you never taken
12  responsibility for this crime. You lied in the Court about
13  what had occurred, and it was very obvious to me and to the
14  jury, obviously. They wouldn't have come back with a guilty
15  verdict if they thought you were telling the truth. And
16  you're still being pretty dangerous, even when you're locked
17  up.
18    THE DEFENDANT: Your Honor, if it wasn't for the
19  District Attorney stating that -- "Please tell the jury" --
20    THE COURT: Mr. Lewis, I'm not going to discuss
21  what occurred at that trial. You were found guilty, and I
22  think the jury was accurate, because I heard the same
23  evidence --

10

1    Ma'am, you're not allowed to speak, so don't even
2  raise your hand, please.
3    I heard the evidence and I heard your ridiculous
4  story explaining what that evidence was. And I had the same
5  reaction to your ridiculous story that the 12 members of the
6  jury did. So, today, you're still not taking responsibility
7  for what you did in this case. And today, after you've been
8  sent to the Delaware Psychiatric Center, pretending that you
9  have some serious problem and terrorizing people there,
10  sexually suggesting sexual innuendos to some of the female
11  staff members -- the report that I read does not paint you
12  in a real good light, Mr. Lewis. So, you think of yourself
13  far differently than what others think of you. I need you
14  to understand that. But, today, you have not yet taken
15  responsibility for this crime, and that's of great concern.
16  Your lack of remorse is of great concern to this Court.
17    In addition, you have other convictions which
18  would have made you habitual eligible in Delaware had the
19  State had an opportunity to prove that today. And I'm
20  taking that into consideration as well.
21    It's the sentence of the Court, effective
22  February 11 -- well, effective May 26, 2003, on the
23  carjacking offense, IN-03060175, you're placed in the

11

1  custody of the Department of Corrections for five years at
2  Level 5. On the felony theft charge, you're placed in the
3  custody of the custody of the Department of Corrections for
4  two years Level 5; suspended after one year for one year at
5  Level 4 Plummer Center; suspended after six months for six
6  months at Level 3. And on the resisting-arrest charge,
7  you're placed in the custody of the Department of
8  Corrections for one year at Level 5, suspended for one year
9  at Level 2 probation.
10    You're to complete anger-control management
11  counseling while incarcerated. You're to participate in any
12  recommended mental health or substance abuse treatment. And
13  you are to have no contact with Patrick Gear.
14    MR. EDINGER: Thank you your Honor.
15    MR. ROBERTSON: Thank you, your Honor.
16    THE DEFENDANT: Thank you, your Honor.
17    MR. FARREN: Your Honor, that would complete
18  your Honor's sentencing calendar this morning.
19    THE COURT: Court stands in recess.
20    (Sentencing concluded.)
21
22
23

12

## CERTIFICATE OF COURT REPORTER

I, Lynne B. Coale, RMR, CRR, Official Court
Reporter of the Superior Court, State of Delaware, do hereby
certify that the foregoing is an accurate transcript of the
proceedings had, as reported by me, in the Superior Court of
the State of Delaware, in and for New Castle County, in the
case herein stated, as the same remains of record in the
Office of the Prothonotary at Wilmington, Delaware.

WITNESS my hand this 18th day of March, 2005.

Cert. # 165-PS

Lynne Bell Coale, RMR, CRR
Official Court Reporter

IN THE SUPREME COURT OF THE STATE OF DELAWARE

064 , 2005

J. S. EDINGER

JIMMY LEWIS,
    Defendant Below,
    Appellant,
v.

L. C. MEYERS

STATE OF DELAWARE,
    Plaintiff Below,
    Appelee.

DF $ 00.00

2005

| 1 | Feb 18 | Notice of appeal from the sentence imposed on 2/11/05 in the Superior Court in and for New Castle County by Judge Ableman in Cr.A.Nos. IN-03-06-0175, IN-03-06-0176 and IN-03-06-0177 and Cr.ID No. 0305016966, with designation of transcript. (served by hand 2/18/05) (rdd) (afb) |
| 2 | Feb 18 | Directions to court reporter of proceedings below to be transcribed pursuant to Rule 9(e) by appellant. (service shown on court reporter by hand 2/15/05) (rdd). |
| 3 | Feb 23 | Letter dated 2/23/05 from Clerk to Kathleen Feldman the transcript is due to be filed by 3/28/05 (clh). |
| 4 | Mar 10 | Document entitled "Notice of Service RE: Motion to Dismiss Counsel, and for Court to Appoint New Counsel" by Jimmie Lewis. (eas) |
| 5 | Mar 10 | Letter dated 3/10/05 from Senior Court Clerk to John Edinger, Esquire, forwarding Mr. Lewis' document for appropriate disposition. (eas) |
| 6 | Mar 23 | Court reporter's final transcript log entry: Prothonotary received 3/21/05. (eas) |
| 7 | Mar 23 | Record w/ transcript. (eas) |
| 8 | Mar 23 | Brief schedule issued. (opening brief due 4/22/05) (eas) |
| 9 | Apr 15 | Motion under Rule 15(b) by appellant. (served by hand 4/15/05) (rdd) |
| 10 | Apr 18 | Letter dated 4-13-05 from Jimmie Lewis to Court, regarding trial transcripts. (clh) |
| 11 | Apr 18 | Order dated 4/18/05 by Ridgely, J., appellant's opening brief and appendix are due 6/3/05. (eas) |
| 12 | Apr 19 | Letter dated 4-19-05 from Clerk to John S. Edinger, |

EXHIBIT S-2

Esquire, forwarding Mr. Lewis' letter for appropriate disposition. (clh)

EXHIBIT 1

```
                    SUPERIOR COURT CRIMINAL DOCKET                Page    1
                       ( as of  02/08/2005 )

State of Delaware v.  JIMMY LEWIS                           DOB: 12/25/1966
State's Atty: BRIAN J ROBERTSON , Esq.       AKA:
Defense Atty: JOHN S EDINGER , Esq.


Assigned Judge:

Charges:
Count     DUC#        Crim.Action#   Description        Dispo.   Dispo. Date
----------------------------------------------------------------------------
 001    0305016966    IN03060175    CARJACKING 2ND       TG      10/23/2003
 002    0305016966    IN03060176    THEFT $1000 OR>      TG      10/23/2003
 003    0305016966    IN03060177    RESIST ARREST        TG      10/23/2003

      Event
No.   Date         Event                                Judge
----------------------------------------------------------------------------
1    06/03/2003
      CASE ACCEPTED IN SUPERIOR COURT.
      ARREST DATE: 05/26/2003
      PRELIMINARY HEARING DATE: 060203
      BAIL:  SECURED BAIL-HELD               12,000.00 100%
      NO CONDITION
2    06/30/2003
      INDICTMENT, TRUE BILL FILED.NO 6
      SCHEDULED FOR CASE REVIEW AND ARRAIGNMENT 07/28/03 AT 9:00
3    07/03/2003
      ACKNOWLEDGEMENT OF RECEIPT OF DISCOVERY RESPONSE.
      JOHN EDINGER
4    07/14/2003
      SUMMONS MAILED.
     07/28/2003                                COOCH RICHARD R.
      CASE REVIEW & ARRAIGNMENT CALENDAR: SET FOR FINAL CASE REVIEW.
      DATE: 8/18/03 @ 9:00
6    08/12/2003
      DEFENDANT'S LETTER FILED.
     08/18/2003                              GEBELEIN RICHARD S.
      FINAL CASE REVIEW:  NO PLEA/SET FOR TRIAL_10/21/2003.
5    08/18/2003
      ORDER SCHEDULING TRIAL FILED.
      TRIAL DATE:__10/21/03
      CASE CATEGORY:_____2
      ASSIGNED JUDGE (CATEGORY 1 CASES ONLY):
      UNLESS THE COURT IS ADVISED WITHIN 2 WEEKS OF THE UNAVAILABILITY
      OF NECESSARY WITNESSES, THE COURT WILL CONSIDER THE MATTER READY
      FOR TRIAL.  ABSENT EXCEPTIONAL CIRCUMSTANCES, RESCHEDULING OR
      CONTINUANCE REQUESTS WILL BE DENIED.
8    08/29/2003
```

```
                    SUPERIOR COURT CRIMINAL DOCKET          Page    2
                       ( as of  02/08/2005 )
```

State of Delaware v.  JIMMY LEWIS                        DOB: 12/25/1966
State's Atty: BRIAN J ROBERTSON , Esq.      AKA:
Defense Atty: JOHN S EDINGER , Esq.

```
     Event
No.  Date          Event                          Judge
-----------------------------------------------------------------------------
     DEFENDANT'S LETTER FILED.
12   09/30/2003
     DEFENDANT'S LETTER FILED.
7    10/06/2003
     SUBPOENA(S) MAILED.
9    10/07/2003
     DEFENDANT'S LETTER FILED.
13   10/07/2003
     STATE'S WITNESS SUBPOENA ISSUED.
22   10/10/2003
     DEFENDANT'S LETTER FILED.
15   10/14/2003
     MOTION FOR DISCOVERY AND MOTION TO SUPPRESS FILED PROSE. REFERELL MEMO
     (RULE 47) SENT TO P.D. OFFICE TO MR. EDINGER.
16   10/14/2003
     DEFENDANT'S LETTER FILED.
     TO: J. EDINGER
     LETTER REFERRED TO COUNSEL
10   10/15/2003
     DEFENDANT'S LETTER FILED.
11   10/15/2003
     DEFENDANT'S LETTER FILED.
14   10/17/2003
     REFERRAL TO COUNSEL MEMORANDUM FILED.
     ATTACHING LETTER/DOCUMENT FROM DEFENDANT.  REFERRED TO DEFENSE COUNSEL
     AS ATTORNEY OF RECORD.  COPY OF DEFENDANT'S LETTER NOT REVIEWED BY THE
     COURT AND NOT RETAINED WITH THE COURT'S FILE.  PLEASE ADVISE YOUR
     CLIENT THAT FURTHER COMMUNICATIONS REGARDING THIS CASE SHOULD BE
     DIRECTED TO YOU. J. EDINGER
     REFERRED BY: S. NAPIER
18   10/20/2003
     STATE'S WITNESS SUBPOENA RETURNED
17   10/21/2003                              ABLEMAN PEGGY L.
     TRIAL CALENDAR- WENT TO TRIAL JURY
19   10/21/2003                              ABLEMAN PEGGY L.
     JURY TRIAL HELD 10/21/03, 10/22/03, AND 10/23/03.
     JURY SWORN IN 10/21/03 AT 3:10 P.M.
     10/22/03 DEFENSE MOTION FOR ACQUITTAL ON ALL 3 COUNTS.  MOTION DENIED
     ON ALL 3 COUNTS.
     JURY FOUND DEFENDANT GUILTY OF CARJACKING 2ND (0175), THEFT (0176) AND
     RESISTING ARREST (0177).
     PSI ORDERED. SENTENCING SCHEDULED FOR 12/5/03 AT 9:30 A.M.
```

```
                    SUPERIOR COURT CRIMINAL DOCKET              Page    3
                        ( as of  02/08/2005 )
```

State of Delaware v.  JIMMY LEWIS                        DOB: 12/25/1966
State's Atty: BRIAN J ROBERTSON , Esq.       AKA:
Defense Atty: JOHN S EDINGER , Esq.

```
      Event
No.   Date         Event                              Judge
------------------------------------------------------------------------------
      1 COURT EXHIBIT. GAVE TO EDGAR JOHNSON TO PUT IN VAULT.
      AG/ROBERTSON - PD/EDINGER - CR/FELDMAN, DONNELLY & MAURER - CC/CARUSO.
      JUDGE HERLIHY TOOK THE VERDICT FOR JUDGE ABLEMAN
24    10/21/2003
      LETTER FROM: MARGOT R. MILLAR, OFFICE OF DISCIPLINARY COUNSEL
      TO: DEFENDANT.
      RE: DISCIPLINARY COMPLAINT AGAINST DEFTS. COURT APPOINTED ATTY.
      *SEE FULL LETTER IN FILE*
20    10/23/2003                                    ABLEMAN PEGGY L.
      CHARGE TO THE JURY FILED.
21    10/23/2003
      VOIR DIRE QUESTIONS FILED.
      STATE'S PROPOSED VOIR DIRE.
23    11/04/2003
      LETTER FROM SUPREME COURT TO JIMMY LEWIS
      RE: THE SUPREME COURT IS IN RECEIPT OF YOUR LETTER
      DATED OCTOBER 24, 2003. THE SUPREME COURT IS AN APPELLATE COURT
      WHICH RECEIVES APPEALS AND RELATED DOCUMENTS FILED PURSUANT
      TO SUPREME COURT RULES. ACCORDING TO THE SUPREME COURT RECORDS,
      YOU DO NOT HAVE AN APPEAL PENDING AT THIS TIME. BY COPY OF THIS
      LETTER I AM PROVIDING COPIES OF YOUR LETTER TO YOUR ATTORNEY, AND
      THE DEPUTY ATTORNEY GENERAL, THE PROTHONOTARY.
25    11/14/2003
      MOTION FOR PSYCHOLOGICAL/PSYCHIATRIC EXAM FILED.
      BY JOHN S EDINGER JR,ESQ
      REFERRED TO JUDGE TOLIVER-OFFICE JUDGE SENT UP (11/24/03)
26    12/01/2003                                    TOLIVER CHARLES H. IV
      ORDER: ORDERED THAT JIMMY LEWIS THE DEFENDANT, BE TRANSFERRED TO THE
      DELAWARE STATE HOSPITAL FOR PSYHIATRIC EVALUATION FOR THE PURPOSE OF
      DETERMINING COMPETENCY, AND TO OBTAIN TREATMENT FOR HIS OWN WELL-BEING
      AS SOON AS DELAWARE STATE HOSPITAL NOTIFIES GANDER HILL OF AN
      AVAILABLE OPENING, JIMMY LEWIS IS TO BE TRANSPORTED AND EVALUATED.
27    12/03/2003
      MOTION FOR TRANSCRIPT FILED PROSE.  REFERRED TO JUDGE ABLEMAN.
      * NOTE FROM CHAMBERS-JUDGE REVIEWED BOTH LETTERS 12/22/03 NO ACTION
      NEEDED. AMH
28    12/16/2003
      DEFENDANT'S LETTER FILED.
29    01/13/2004
      DEFENDANT'S LETTER FILED.
30    03/01/2004
      LETTER FROM: JOHN S. EDINGER, ESQ.       TO: JUDGE ABLEMAN
```

```
              SUPERIOR COURT CRIMINAL DOCKET            Page    4
                    ( as of  02/08/2005 )

State of Delaware v.  JIMMY LEWIS                      DOB: 12/25/1966
State's Atty: BRIAN J ROBERTSON , Esq.     AKA:
Defense Atty: JOHN S EDINGER , Esq.


     Event
No.  Date         Event                           Judge
-----------------------------------------------------------------------------
     RE:  ON 12/01/03, THE COURT ORDERED THAT THE DEFENDANT BE TRANSFERRED
     TO THE DELAWARE STATE HOSPITAL FOR PSYCHIATRIC EVALUATION.  TO DATE,
     HE HAS NOT BEEN TRANSPORTED FOR AN EVALUATION.
     (LETTER AND FILE REFERRED TO JUDGE ABLEMAN 03/01/04)
31   03/11/2004
     MOTION FOR JUDGMENT OF ACQUITTAL FILED PROSE.  REFERRED TO JUDGE
     ABLEMAN
32   03/23/2004                              ABLEMAN PEGGY L.
     LETTER/ORDER ISSUED BY JUDGE: ABLEMAN
     RE: THE COURT HAS CONSIDERED YOUR PRO SE MOTION FOR JUDGEMENT OF
     ACQUITTAL.  NORMALLY, THE COURT WILL NOT CONSIDER ANY PLEADINGS THAT
     YOU FILE PRO SE SINCE YOU ARE REPRESENTED BY COUNSEL, JOHN EDINGER.
     YOU SHOULD CONSULT WITH HIM FOR THE FILING OF ANY MOTIONS OR PLEADINGS
     IN THIS CASE, YOUR MOTION FOR JUDGEMENT OF ACQUITTAL IS UNTIMELY AND
     IS THEREFORE HEREBY DENIED.  IT IS SO ORDERED JUDGE ABLEMAN.
33   04/19/2004
     PETITION FOR A WRIT OF HABEAS CORPUS FILED (PRO SE)
     REFERRED TO JUDGE CARPENTER.
     DATE REFERRED: 4/21/04
     CIVIL CASE NO: 04M-04-054
34   04/26/2004                              CARPENTER WILLIAM C. JR.
     LETTER/ORDER ISSUED BY JUDGE CARPENTER.
     RE: HABEAS CORPUS PETITION 04M-04-054 IS DENIED.
     YOUR REQUEST FOR HABEAS CORPUS RELIEF HAS BEEN FORWARDED TO ME FOR A
     DECISION. A REVIEW OF THE DOCKET IN THIS MATTER CLEARLY INDICATES THAT
     YOU WERE CONVICTED ON OCTOBER 21, 2003 ON THE CHARGES OF CARJACKING
     SECOND DEGREE, THEFT, AND RESISTING ARREST AND THE TRIAL WAS PRESIDED
     OVER BY JUDGE ABLEMAN. IN NOVEMBER, 2003, YOUR COUNSEL, MR. EDINGER,
     FILED A MOTION FOR A PSYCHIATRIC EXAMINATION WHICH WAS APPROVED BY
     JUDGE TOLIVER ON DECEMBER 1, 2003. WHILE I APPRECIATE THAT YOU ARE
     UPSET REGARDING THE DELAY THAT HAS OCCURED WITH REGARD TO THIS
     EVALUATION, IT DOES NOT PROVIDE YOU WITH A BASIS FOR HABEAS CORPUS
     RELIEF. SINCE IT IS CLEAR BASED UPON THE ABOVE THAT YOU ARE PRESENTLY
     BEING HELD CONSISTENT WITH YOUR CONVICTION ON THE ABOVE CHARGES AND
     YOUR FAILURE TO POST APPROPRIATE BAIL, YOUR REQUEST IS HEREBY DENIED.
     I WILL FORWARD A COPY OF THIS LETTER TO JUDGE ABLEMAN AND JUDGE
     TOLIVER SO THAT THEY MAY BE AWARE OF THE DELAY THAT IS OCCURRING. WCC
35   04/26/2004
     NOTICE OF SERVICE
     RE: COPY OF GROUNDS FOR APPEAL
36   05/07/2004
     DEFENDANT'S LETTER FILED.
```

```
                    SUPERIOR COURT CRIMINAL DOCKET              Page    5
                      ( as of  02/08/2005 )

State of Delaware v.  JIMMY LEWIS                        DOB: 12/25/1966
State's Atty: BRIAN J ROBERTSON , Esq.      AKA:
Defense Atty: JOHN S EDINGER , Esq.

      Event
No.   Date        Event                              Judge
------------------------------------------------------------------------------
37   05/13/2004
        PSYCHOLOGICAL/PSYCHIATRIC REPORT FILED.
        SUBMITTED BY:__DONALD NAPOLIN, MENTAL HEALTH SUPERVISOR
        AND ORDER REQUESTING DEFENDANT BE TRANSFERED TO MITCHELL BUILDING
        GRANTED BY JUDGE TOLIVER ON 5-13-04
38   05/14/2004
        DEFENDANT'S LETTER FILED.
        LETTER REGARDING NAMES AND PLACE EMPLOYMENT OF BAILIFF'S WHO PROVIDED
        COURT ON 10/21 10/23 FOR A WRIT OF MANDAMUS TO BE FILED.
        *SEE FULL LETTER IN FILE.
40   06/16/2004
        LETTER FROM DIANNE STACHOWSKI TO JUDGE TOLIVER, REQUESTING DEFT
        BE TRANSFERED BACK TO DOC.
39   06/28/2004
        PSYCHOLOGICAL/PSYCHIATRIC REPORT FILED.
        SUBMITTED BY:  SYLVIA FOSTER MD
        COPY SENT TO ATTORNEY AND JUDGE TOLIVER
41   06/29/2004
        LETTER FROM DIANNE STACHOWSKI TO JUDGE TOLIVER REQUESTING DEFENDANT
        BE TRANSFERRED BACK TO DOC.
42   07/06/2004
        LETTER FROM COMMISSIONER WHITE TO COUNSEL GIVING THEM 10 DAYS TO
        REQUEST A COMPETENCY HEARING AND INFORMING OF THE SENTENCING DATE
        OF 8-27-04 AT 9:30 WITH JUDGE TOLIVER.
43   07/19/2004
        MOTION TO DECLARE DEFENDANT AN HABITUAL OFFENDER FILED.
        BY BRIAN J ROBERTSON,DAG
        MOTION PUT IN FILE TO BE HEARD AT SENTENCING
44   07/26/2004
        PSYCHOLOGICAL/PSYCHIATRIC REPORT FILED.
        COPY RECEIVED FROM DEFENDANT LEWIS
        SEALED BY ORDER OF SUPERIOR COURT
45   08/02/2004
        CONTINUANCE REQUEST FILED BY J EDINGER - GRANTED PER JUDGE ABLEMAN
        (SENTENCING)
46   08/09/2004
        MOTION TO DISMISS COUNSEL FILED PRO SE.  REFERRED TO JUDGE ABLEMAN
47   08/17/2004
        MOTION FOR COMPETENCY HEARING FILED PRO SE.  REFERRED TO JUDGE ABLEMAN
48   08/17/2004
        MOTION FOR DISCOVERY FILED PRO SE. REFERRED TO JUDGE ABLEMAN
49   08/20/2004                                ABLEMAN PEGGY L.
```

```
                      SUPERIOR COURT CRIMINAL DOCKET              Page    6
                          ( as of  02/08/2005 )
```

State of Delaware v.  JIMMY LEWIS                          DOB: 12/25/1966
State's Atty: BRIAN J ROBERTSON , Esq.       AKA:
Defense Atty: JOHN S EDINGER , Esq.

```
        Event
No.     Date          Event                              Judge
-----------------------------------------------------------------------------
        LETTER FROM JUDGE ABLEMAN   TO JOHN EDINGER, ESQ.
        RE: STATE V. JIMMIE LEWIS
        ENCLOSED PLEASE FIND CORRESPONDENCE RECEIVED BY THE COURT FROM THE
        ABOVE DEFENDANT WHOM YOU REPRESENT. IT IS REFERRED TO YOU FOR SUCH
        ACTION AS YOU DEEM APPROPRIATE.
        SUPERIOR COURT RULE 47 PROVIDES IN PERTINENT PART, "THE COURT WILL NOT
        CONSIDER PRO SE APPLICATIONS BY DEFENDANTS WHO ARE REPRESENTED BY
        COUNSEL". PLEASE NOTIFY YOUR CLIENT THAT FURTHER CORRESPONDENCE OR
        MOTIONS SHOULD BE MAILED DIRECTLY TO YOUR OFFICE FOR APPROPRIATE
        ACTION. THANK YOU.
50      08/20/2004                              ABLEMAN PEGGY L.
        LETTER FROM JUDGE ABLEMAN   TO JIMMIE LEWIS
        RE: STATE V. JIMMIE LEWIS
        I HAVE YOUR MOTION FOR APPOINTMENT OF NEW COUNSEL. THE MOTION IS
        DENIED. I HAVE REFERRED YOUR MOTION FOR COMPETENCY HEARING TO MR.
        EDINGER AS SUPERIOR COURT CRIMINAL RULE 47 DOES NOT PERMIT YOU TO FILE
        PRO SE APPLICATIONS WHEN YOU ARE REPRESENTED BY COUNSEL.
51      08/31/2004
        DEFENDANT'S LETTER FILED.
        TO: JUDGE ABLEMAN
        REGARDING PRESENTENCE REPORT.
52      09/07/2004
        _ MOTION FOR NEW TRIAL FILED PRO SE.  REFERRED TO COUNSEL
        09/08/2004
        MOTION FOR NEW TRIAL
53      09/08/2004
        REFERRAL TO COUNSEL MEMORANDUM FILED.
        ATTACHING LETTER/DOCUMENT FROM DEFENDANT.  REFERRED TO DEFENSE COUNSEL
        AS ATTORNEY OF RECORD.  COPY OF DEFENDANT'S LETTER NOT REVIEWED BY THE
        COURT AND NOT RETAINED WITH THE COURT'S FILE.  PLEASE ADVISE YOUR
        CLIENT THAT FURTHER COMMUNICATIONS REGARDING THIS CASE SHOULD BE
        DIRECTED TO YOU.  J. EDINGER
        REFERRED BY: S. NAPIER
54      09/21/2004
        MOTION TO DECLARE THE DEFENDANT NOT GUILTY BY REASON OF INSANITY FILED
        PROSE.  REFERRED TO COUNSEL OF RECORD.
55      09/29/2004
        REFERRAL TO COUNSEL MEMORANDUM FILED.
        ATTACHING LETTER/DOCUMENT FROM DEFENDANT.  REFERRED TO DEFENSE COUNSEL
        AS ATTORNEY OF RECORD.  COPY OF DEFENDANT'S LETTER NOT REVIEWED BY THE
        COURT AND NOT RETAINED WITH THE COURT'S FILE.  PLEASE ADVISE YOUR
        CLIENT THAT FURTHER COMMUNICATIONS REGARDING THIS CASE SHOULD BE
```

```
                    SUPERIOR COURT CRIMINAL DOCKET              Page    7
                      ( as of  02/08/2005 )

State of Delaware v.  JIMMY LEWIS                          DOB: 12/25/1966
State's Atty: BRIAN J ROBERTSON , Esq.      AKA:
Defense Atty: JOHN S EDINGER , Esq.


      Event
No.   Date          Event                            Judge
---------------------------------------------------------------------------
      DIRECTED TO YOU.  JOHN EDINGER
      REFERRED BY: S. NAPIER
56    10/08/2004
      DEFENDANT'S REQUEST FILED.
      REQUEST TO HAVE DOCKET ENTRY #54 CORRECTED.  ERROR CORRECTED 10/12/04.
      NOTICE OF REQUESTED CORRECTION SENT TO DEFENDANT.
57    10/19/2004
      NOTICES OF SERVICE (SEVERAL SEE FILE)
      REQUEST FOR A FULL AND FAIR EVIDENTIARY HEARING TO DETERMINE MATERIAL
      FACTS TO ALLEDGED DENIALS OF CONSTITUTIONAL RIGHTS.
59    10/29/2004
      NOTICE OF SERVICE
58    11/02/2004
      NOTICE OF SERVICES
60    11/03/2004
      NOTICE OF SERVICES
61    11/09/2004
      NOTICE OF SERVICES.
62    11/15/2004
      NOTICE OF SERVICE
      APPLICATION FOR CERTIFICATION TO THE SUPREME COURT OF DELAWARE
63    11/16/2004
      NOTICE OF SERVICE
      DOCUMENTS THE DEFENDANT WANTS THE COURT TO REVIEW.
64    11/17/2004
      NOTICE OF SERVICE
66    11/19/2004
      NOTICE OF SERVICE
      DOCKET ENTRIES (RULE 55)
65    11/29/2004
      PETITION FOR A WRIT OF HABEAS CORPUS FILED (PRO SE)
      REFERRED TO JUDGE ABLEMAN, THEN TO JUDGE TOLIVER.
      DATE REFERRED: 11/30/04
      CIVIL CASE NO: 04M-11-098
67    12/03/2004
      NOTICE OF SERVICE
      AS OF TO DATE THE DEFENDANT HAS NOT REVIEWED THE PRE-SENTENCE REPORT
      AS IT IS REQUIRED BY SUPERIOR COURT CRIMINAL RULE 32(C)(3)
68    12/10/2004
      DOCUMENT(S) FILED REGARDING SUPREME COURT APPEAL.
      RE: NOTICE OF APPEAL FROM INTERLOCUTORY ORDER.
69    12/21/2004
```

```
                    SUPERIOR COURT CRIMINAL DOCKET              Page    8
                        ( as of  02/08/2005 )

State of Delaware v.  JIMMY LEWIS                        DOB: 12/25/1966
State's Atty: BRIAN J ROBERTSON , Esq.      AKA:
Defense Atty: JOHN S EDINGER , Esq.


      Event
No.   Date           Event                              Judge
---------------------------------------------------------------------------
      DOCUMENT(S) FILED REGARDING SUPREME COURT APPEAL.
      DIRECTIONS TO COURT REPORTER OF PROCEEDURES BELOW TO
      BE TRANSCRIBED PURSUANT TO RULE 9 (E)
70    12/27/2004                              TOLIVER CHARLES H. IV
      LETTER/ORDER ISSUED BY JUDGE TOLIVER. RE: HABEAS PETITION 04M-11-098.
      I HAVE NOW HAD THE OPPORTUNITY TO REVIEW YOUR PETITION SEEKING THE
      ISSUANCE OF A WRIT OF HABEAS CORPUS WHICH WAS FILED WITH THE
      PROTHONOTARY ON NOVEMBER 29, 2004. IT IS UPON THAT REVIEW THAT I MUST
      DECLINE THE RELIEF YOU SEEK. MORE SPECIFICALLY, YOUR PETITION SEEMS TO
      COMPLAIN THAT YOU WERE NOT RETURNED FROM THE DELAWARE PSYCHIATRIC
      CENTER TO THE CUSTODY OF THE DEPARTMENT OF CORRECTION AS REQUESTED BY
      MS. STACHOWSKI'S CORRECTPONDENCE. ON JUNE 29, THAT DOCUMENT WAS FILED
      WITH THE PROTHONOTARY. PLEASE REFER TO THE COPY OF THE ENCLOSED
      DOCKET, ENTRY NUMBER 41.
      IT APPEARS THAT YOUR PETITION DOES NOT CONTAIN ANY OTHER BASIS FOR
      RELIEF. ACCORDINGLY, YOUR PETITION MUST BE DENIED, AS IT DOES NOT
      STATE A CLAIM UPON WHICH SUCH A WRIT MAY BE ISSUED.
      IT IS SO ORDERED. CHT
71    01/06/2005
      PETITION FOR A WRIT OF HABEAS CORPUS FILED (PRO SE)
      REFERRED TO JUDGE TOLIVER.
      DATE REFERRED: 1/10/05
      CIVIL CASE NO: 05M-01-033

           *** END OF DOCKET LISTING AS OF  02/08/2005 ***
                 PRINTED BY: CSCACOL
```